IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| and | Civil Action No. 1-20-cv-397 |
| SIERRA CLUB, | Hon. Paul L. Maloney |
| *Intervener*, | Hon. Phillip J. Green |
| v. | |
| WALNUTDALE FAMILY FARMS, LLC, | **CONSENT DECREE** |
| and | |
| KEVIN LETTINGA, | |
| *Defendants*. | |

1

## TABLE OF CONTENTS

I.       JURISDICTION AND VENUE ................................................................................... 2

II.      APPLICABILITY ...................................................................................................... 3

III.     DEFINITIONS .......................................................................................................... 4

IV.      COMPLIANCE REQUIREMENTS .......................................................................... 7

V.       REVIEW AND APPROVAL PROCEDURES ....................................................... 12

VI.      CIVIL PENALTY ................................................................................................... 14

VII.     STIPULATED PENALTIES ................................................................................... 15

VIII.    FORCE MAJEURE ................................................................................................. 18

IX.      DISPUTE RESOLUTION ....................................................................................... 20

X.       INFORMATION COLLECTION AND RETENTION ........................................... 23

XI.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ 24

XII.     COSTS ..................................................................................................................... 26

XIII.    NOTICES ................................................................................................................ 26

XIV.     EFFECTIVE DATE ................................................................................................. 28

XV.      RETENTION OF JURISDICTION ......................................................................... 28

XVI.     MODIFICATION .................................................................................................... 29

XVII.    TERMINATION ...................................................................................................... 29

XVIII.   PUBLIC PARTICIPATION .................................................................................... 30

XIX.     SIGNATORIES/SERVICE ..................................................................................... 30

XX.      INTEGRATION ...................................................................................................... 31

XXI.     FINAL JUDGMENT ............................................................................................... 31

XXII.    APPENDICES ......................................................................................................... 31

WHEREAS Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this action alleging that Defendants Kevin Lettinga and Walnutdale Family Farms, LLC violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, and the terms and conditions of two National Pollutant Discharge Elimination System ("NPDES") permits issued under Section 402 of the CWA, 33 U.S.C. § 1342.

WHEREAS the Complaint alleges that Defendant Walnutdale Family Farms, LLC, owns and operates a dairy farm located at 4309 14th Street in Wayland, Michigan (the "Walnutdale Facility" or the "Facility") and that Defendant Kevin Lettinga is an owner and the operator of Walnutdale Family Farms, LLC, and owns and operates, and otherwise exercises control over, the Facility.

WHEREAS the Complaint alleges that numerous violations occurred at the Facility, including unlawful discharges, failure to report discharges, inadequate operation and maintenance of Waste Storage Devices, failure to conduct Land Application in accordance with the permit requirements, and insufficient recordkeeping.

WHEREAS Plaintiff Sierra Club moved to intervene in this action on May 11, 2020.

WHEREAS Plaintiff Sierra Club was the first plaintiff to file a complaint against Walnutdale Farms Inc., Kevin Lettinga, and Ralph Lettinga concerning the Facility in 2000.

WHEREAS the United States previously filed a complaint against Walnutdale Farms, Inc., Kevin Lettinga, and Ralph Lettinga concerning the Facility in 2002. Kevin Lettinga and Ralph Lettinga previously operated the Facility through and under the name of Walnutdale Farms, Inc., which was dissolved on July 15, 2006 by the State of Michigan.

WHEREAS that case was consolidated with a case brought by the Sierra Club and its Michigan Chapter, proceeded into fact discovery, and was resolved through a consent decree

1

entered by the Court in 2004 (W.D. Mich. Civ. No. 4:00-cv-193, Dkt. 66) (the "2004 Consent Decree").

WHEREAS on April 30, 2015, pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, MDEQ issued general CAFO NPDES Permit No. MIG010000. MDEQ issued Certificate of Coverage No. MIG010063 under general CAFO NPDES Permit No. MIG010000 to Walnutdale Farms LLC on December 23, 2016.

WHEREAS the Defendants have provided documentation to identify and describe to EPA all areas and/or processes that contribute stormwater, manure, and/or process wastewater to the Facility's waste storage structures, including the source and volume of the contribution from each area and/or process to each waste storage structure.

WHEREAS the Defendants have provided documentation to demonstrate, by listing the volume of storage remaining in each waste storage structure, that between November 1 and December 31, 2020, the Facility had an available operational volume in its WSDs equal to the volume of concentrated animal feeding operation waste generated from the operation of the Facility in a six-month or greater time period (including normal precipitation and runoff in the production area during the same time period.)

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over

the Parties.  Venue properly lies in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395(a), because it is the judicial district where the Defendants are located and where the alleged violations occurred.  For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendants consent to the Court's jurisdiction and consent to venue in this judicial district.

## II.     APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the United States and Sierra Club and upon the Defendants and their officers, directors, employees, agents, servants, successors, assigns, or other entities or persons otherwise bound by law.

3.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Western District of Michigan, and the United States Department of Justice, in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

4.      Within thirty (30) Days after the Effective Date of this Consent Decree, the Defendants shall provide a copy of this Consent Decree to all officers, directors, employees, agents, and managers whose duties might reasonably include compliance with any substantive provision of this Consent Decree, as well as to a principal responsible officer or senior management official of any contractor retained to perform substantive work required under this Consent Decree.

Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

5.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.      DEFINITIONS

6.      Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree.  Terms not defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the NPDES Permit unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      Animal feeding operation ("AFO"), as defined in EPA's implementing regulations at 40 C.F.R. § 122.23 (b)(1), shall mean a lot or facility (other than an aquatic animal production facility) where the following conditions are met:

i.      Animals (other than aquatic animals) have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and

ii.      Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility.

b.      Concentrated animal feeding operation ("CAFO") has the definition in 502(14) of the CWA and in EPA's implementing regulations at 40 C.F.R.§ 122.23 (b)(2).

c.      "CAFO Process Wastewater" shall mean water directly or indirectly used in the operation of a CAFO for any of the following:

4

     i.       Spillage or overflow from animal or poultry watering systems;

     ii.      Washing, cleaning, or flushing pens, barns, manure pits, or other AFO facilities;

     iii.     Direct contact swimming, washing, or spray cooling of animals;

     iv.     Dust control;

     v.      Any water which comes into contact with, or is a constituent of, any raw materials, products, or byproducts, including manure, litter, feed, milk, eggs, or bedding.

d.     "CAFO Waste" shall mean CAFO Process Wastewater, manure, production area waste, effluents from the properly and successfully operated treatment system, or any combination thereof.

e.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto listed in Section XXII (Appendices).  In the event of a conflict between this Decree and any appendix, this Decree shall control.

f.     "Date of Lodging" shall mean the date on which this Consent Decree is lodged with the United States District Court for the Western District of Michigan for a period of public comment.

g.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last Day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business on the next business day.

h.     "Defendants" shall mean Kevin Lettinga and Walnutdale Family Farms, LLC and any officers, directors, agents, employees, successors, and assigns.

i.     "Deliverable" shall mean any written document required to be prepared and/or submitted to EPA by or on behalf of Defendants in order to comply with a requirement of this Consent Decree.

j.     The "East Manure Storage Facility" is identified as "P1" on Appendix A.

k.     "Effective Date" shall have the definition provided in Section XIV of the Consent Decree.

l.     "EGLE" shall mean the Michigan Department of Environment, Great Lakes, and Energy and any of its successor departments or agencies.

m.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

n.     "Facility" or "Walnutdale Facility" shall mean the Walnutdale Family Farms, LLC dairy farm located at 4309 14th Street in Wayland, Michigan.

o.     "Land Application" shall mean spraying or spreading of biosolids, CAFO Waste, wastewater and/or derivatives onto the land surface, injecting below the land surface, or incorporating into the soil so that the biosolids, CAFO Waste, wastewater and/or derivatives can either condition the soil or fertilize crops or vegetation grown in the soil.

p.     "Land Application Area" shall mean land under the control of Defendants, whether it is owned, rented, leased, or subject to an access agreement, to which CAFO waste is or may be applied. Land Application Area includes land not owned by the Defendants but where the Defendants have control of the Land Application of CAFO Waste.

q.     "Manure" shall mean animal excrement and is defined to include bedding, compost, and raw materials, or other materials commingled with animal excrement or set aside for disposal.

r.     "MDEQ" shall mean the Michigan Department of Environmental Quality. MDEQ has been succeeded by EGLE.

s.     "NPDES Permit" shall mean the general CAFO Permit No. MIG010000 issued by MDEQ on April 30, 2015 or CAFO Permit No. MIG01000 issued on March 27, 2020, including any revisions and modifications thereto, and any newly issued permits that replace these permit issued by EPA, EGLE, or any successor agency of the State of Michigan or the United States. The Permit for which the Facility has a Certificate of Coverage at the relevant time shall apply.

t.     "Nutrient Management Plan" or "NMP" shall mean the requirements and limitations for Land Application described in the NPDES Permit.

u.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or letter.

v.     "Parties" shall mean the United States of America on behalf of EPA, the Sierra Club, Defendant Kevin Lettinga, and Defendant Walnutdale Family Farms, LLC.

w.     "Pit 7" is shown on Appendix A next to the structure marked B7.

x.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

y.     "United States" shall mean the United States of America, acting on behalf of EPA, including its departments, agencies, and instrumentalities.

z.     "Waste Storage Device" or "WSD" shall mean storage structures for CAFO Waste and includes both pond-type storage structures and fabricated storage structures.

## IV.   COMPLIANCE REQUIREMENTS

7.   <u>Storage Assessment.</u> Within ninety days of the Effective Date, Defendants shall empty, survey, and assess the integrity of the East Manure Storage Device and Pit 7. Defendants

7

may begin this work prior to the Effective Date. Defendants shall prepare and submit to EPA for approval a work plan and an accompanying implementation timeline for the repair of any WSD with compromised integrity (including liner integrity problems such as air bubbles, tears, or holes) to ensure compliance with the NPDES Permit.  Defendants shall complete all necessary repairs or replacements in accord with the implementation timeline, once approved.

8.     <u>Depth Markers.</u>  Defendants shall maintain depth markers in each of the Facility's waste storage devices. The Depth Markers must clearly indicate the following levels as defined in the NPDES Permit: (a) the freeboard level, (b) the emergency level, and (c) the operational level.

9.     <u>Woody Vegetation</u>. Defendants shall remove woody vegetation as needed and before any repair or replacement of any liner to prevent further penetration or disturbance of any liners or WSDs to ensure compliance with NPDES Permit Section B.1.

10.    <u>Land Application</u>. Defendants shall implement NMP provisions to ensure that over-application or misapplication of CAFO Waste and other nutrients does not occur.

a.     Within 90 days of the Effective Date, Defendants shall use a method of calculating manure application that complies with the NPDES Permit, and that uses the most recent soil test results (within 3 years as required by Permit) and at least two prior years of land application data  to ensure that phosphorus and nitrogen applications are being conducted as required by the NPDES Permit requirements.

b.     If Defendants apply CAFO Waste associated with the cleanout of the WSDs to a Land Application Area, they must create a nutrient budget for those applications that complies with the NMP.

c.     For each location at which Land Application of CAFO Waste occurs, if soil test results are above 75 ppm Phosphorus, Defendants shall base any Land Application on a rolling average of the three prior years' actual crop yield for that crop as opposed to realistic crop yields.

d.      Defendants' nutrient calculations and Land Application shall comply with the requirements of Part I, Section B.3 of the NPDES Permit. If Defendants want to change their Nitrogen and/or Phosphorus rates from what is allowed in the NPDES Permit, the Defendants shall first submit supportive documentation and receive approval from EPA before seeking an amendment/change to the NPDES permit through EGLE. Defendants shall use the procedure for Deliverables outlined in Section V to seek approval from EPA to use a different nutrient rate.

11.   Reporting.

a.      Defendants shall revise their monitoring and recordkeeping forms as specified below and provide copies of all revised forms to EPA for approval.

i.      *WSD Monitoring Forms*.  Within 60 days of the Effective Date, Defendants shall begin including the following information on their WSD inspection forms: (i) whether the WSD is in its emergency freeboard or operational level; and (ii) record any event other than daily addition of manure or process wastewater that changes liquid levels including, but not limited to, precipitation events (record the approximate rainfall amount) and transfer operations which add greater than 250,000 gallons to a WSD (record the approximate amount transferred). If any drainage covers for catch basins that collect process wastewater in the production area are closed, Defendants shall note the closure on the WSD monitoring form.

ii.      *WSD Maintenance Inspection Logs*.  Within 60 days of the Effective Date, the WSD maintenance inspection logs shall be revised to require a description of: (i) the condition of all WSDs; (ii) the condition of all Depth Markers; (iii) the condition of all manure and process wastewater transfer devices; (iv) any maintenance or repairs to WSDs, depth markers, or transfer devices; and (v) presence of vegetation and any vegetation removal.

b.      For the first year after the entry of this Consent Decree, Defendants shall submit on a quarterly basis completed Land Application records, WSD maintenance inspection

logs, and WSD monitoring forms to EPA (on April 30 for the period of January 1 through March 31, on July 31 for the period of April 1 through June 30, on October 31 for the period of July 1 through September 30, and on January 31 for the period of October 1 through December 31)  and after such first year such records shall be submitted twice each year (on July 31 for the period of January 1 through June 30 and then January 31 for the period of July 1 through December 31) until this Consent Decree is terminated. Submissions under this subparagraph shall be made in accordance with subparagraph f.

        c.      Within ninety (90) days of the Effective Date, Defendants shall submit the following, to EPA:

        i.      2018 and 2019 Daily Manure Application Records

        ii.      2018 and 2019 Manure Analysis Results

        iii.      2018 and 2019 Summary of Crop and Nutrient Balance

        iv.      2018 and 2019 Manure Application Summary

        v.      2018 and 2019 Manure Application Plan Summary

        vi.      2018 and 2019 Commercial Fertilizer Report Summary

Submissions under this subparagraph shall be made in accordance with subparagraph f of this paragraph.

        d.      Defendants shall submit the following documents on an annual basis on April 1 of every year while this Consent Decree is in effect:

        i.      Manure Analysis Results

        ii.      Summary of Crop and Nutrient Balance

        iii.      Manure Application Summary

        iv.      Manure Application Plan Summary

        v.      Commercial Fertilizer Report Summary

vi.      Annual Reports Required by Part I.B.4.d of the NPDES Permit.

Submissions under this subparagraph shall be made in accordance with subparagraph f of this paragraph.

e.      While this Consent Decree is in effect, Defendants shall submit to EPA the Facility's updated NMP within 30 days of each update submitted to EGLE. Defendants shall make the Facility's updated NMP available to Sierra Club within 30 days of its request. Submissions under this subparagraph shall be made in accordance with subparagraph f.

f.      Defendants shall upload the documentation required under this paragraph to a cloud-based file-sharing website and make them available on that website until this Consent Decree is terminated. Defendants shall be responsible for providing EPA and Sierra Club access to the website.  If EPA or Sierra Club is unable to access the cloud-based sharing site, EPA or the Sierra Club shall notify Defendants in writing of such a problem.  Should technical or other difficulties prevent use of the website for any Party, or make use of the website impracticable for any Party, Defendants shall provide their submissions to EPA and Sierra Club by e-mail, in accordance with Section XIII. Except for the reporting required under this paragraph, all other submissions under this Consent Decree shall be made in accordance with Section XIII, unless another method of submission is approved by EPA.

12.      Certification. Each Deliverable submitted to EPA under this Section shall be signed by an official of the submitting party and shall include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am

11

> aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

However, this certification requirement does not apply to emergency or similar notifications where compliance would be impractical.  If a Deliverable is uploaded to a file-sharing site pursuant to Paragraph 11.f, Defendants shall submit a notice pursuant to Section XIII that Defendants or Defendants' agent or employee uploaded the Deliverable subject to the certification of this Paragraph.

13.    The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the CWA or implementing regulations, or by any other federal, State, or local law, regulation, permit, or other requirement.

14.    Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.  The Defendants shall not object to the admissibility into evidence of any report, work plan, notice, or other document prepared in accordance with this Consent Decree or the information contained in said reports in any proceeding to enforce this Consent Decree.

## V.    REVIEW AND APPROVAL PROCEDURES

15.    Approval of Deliverables: After review of any Deliverable that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:

a.    Approve the submission;

b.    Approve part of the submission and disapprove the remainder; or

c.    Disapprove the submission.

EPA shall provide a written response within 90 days.

16.    Approved Deliverables:  If the Deliverable is approved pursuant to Paragraph 15.a, Defendants shall take all actions required by the Deliverable, in accordance with the schedules and

requirements of the Deliverable as approved. Defendants may address emergencies without waiting for EPA approval of their Deliverable, but shall comply with all applicable reporting requirements and shall consult with EPA as soon as practicable. If the Deliverable is approved only in part pursuant to Subparagraph 15.b, Defendants shall, upon written direction from EPA, take all actions required by the approved portions of the Deliverable that EPA determines are technically severable from any disapproved portions.  Following EPA approval of any Deliverable or portion thereof, such Deliverable or portion thereof so approved shall be incorporated into and become enforceable under this Consent Decree.  Implementation of any approved portion of a Deliverable shall not relieve Defendants of any liability for stipulated penalties for any deficient portion of the Deliverable.

17.    <u>Disapproved Deliverables</u>: If the Deliverable is disapproved in part or in whole pursuant to 15.b or 15.c, Defendants shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit to EPA the Deliverable, or disapproved portion thereof, for approval.  If the resubmission of the Deliverable is approved in whole or in part, the Defendants shall take all actions required by the approved Deliverable or approved portions of the Deliverable, in accordance with the schedules and requirements of the Deliverable as approved.

18.    <u>Resubmitted Deliverables</u>:  If a resubmitted Deliverable, or portion thereof, is disapproved in whole or in part, EPA may again require the Defendants to correct any deficiencies, in accordance with Paragraph 17.  EPA also retains the right to modify or develop any disapproved portion of the resubmitted Deliverable.  Upon EPA's correction of any such deficiencies, the resubmitted Deliverable, or portion thereof, shall be incorporated into and become enforceable under this Consent Decree, and the Defendants shall take all actions to immediately implement the EPA-corrected Deliverable in accordance with the schedules and/or terms of the Deliverable as

approved, subject to the Defendant's right to invoke Dispute Resolutions under Section IX (Dispute Resolution) of this Consent Decree and the right of EPA to seek stipulated penalties as set forth in Paragraph

19.    Any stipulated penalties applicable to the original submission, as provided in Section VII (Stipulated Penalties), shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## VI.    CIVIL PENALTY

20.    Within sixty (60) Days of the Effective Date of this Consent Decree, Defendants shall pay the sum of $33,750 as a civil penalty, together with interest accruing from the lodging date of the Consent Decree, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. Defendants shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice account in accordance with written instructions to be provided to Defendants by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Western District of Michigan. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which the Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. At the time of payment, Defendants shall send notice that payment has been made to: (a) EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail to EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (b) the United States via email or regular mail in accordance with Section XIV (Notices); and (c) EPA in accordance with Section XIV (Notices).

Such notice shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in <u>United States and Sierra Club v. Kevin Lettinga and Walnutdale Family Farms, LLC</u>, and shall reference the CDCS Number and the DOJ case number: 90-5-1-1-07515/1.

21.     If in the event that full cash payment to the United States is not made by the due date, Defendants shall also pay to the United States interest on the balance due from the original due date through the date of payment, at the rate calculated pursuant to <u>28 U.S.C. § 1961</u>.

22.     Defendants shall not deduct the civil penalty paid under this Consent Decree in calculating their federal income tax.

## VII.   <u>STIPULATED PENALTIES</u>

23.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan, assessment, or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

24.     <u>Late Payment of Civil Penalty</u>.  If the Defendants fail to pay the civil penalty required by Section VI (Civil Penalty) when due, the Defendants shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

25.     <u>Failure to Provide a Copy of Consent Decree</u>.  If the Defendants fail to provide a copy of this Consent Decree to any proposed transferee or to provide written notice to the United States of the prospective transfer as required by Section II (Applicability) of this Consent Decree, the Defendants shall pay a stipulated penalty of $5,000 per occurrence.

26.     <u>Failure to Permit Entry</u>.  If Defendants fail to permit EPA or its authorized representatives or contractors to enter the Facility as required by Section X (Information Collection

15

and Retention) of this Consent Decree, the Defendants shall pay a stipulated penalty of $1000 per Day per violation.

27.    Failure to Meet Reporting Requirements.  Defendants shall pay stipulated penalties, as set forth below, for each Day they fail to make a timely and complete submission required under paragraph 11.

| Period of Noncompliance | Penalty per Violation per Day |
| --- | --- |
| 1st through 14th day | $250 |
| 15th through 30th day | $500 |
| 31st day and beyond | $1,000 |

28.    Failure to Comply with NPDES Permit, Storage Assessment Requirements, Depth Marker Requirements, Woody Vegetation Requirements, or Land Application Requirements. Defendants shall pay stipulated penalties, as set forth below, per violation for each Day they fail to comply with the terms and conditions contained in the NPDES Permit or any requirement of Paragraphs 7, 8, 9, or 10.

| Period of Noncompliance | Penalty per Violation per Day |
| --- | --- |
| 1st through 14th day | $500 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,000 |

29.    Unauthorized Discharge.  After the date of lodging of this Consent Decree, in the event of a discharge of Manure or Process Wastewater from the Facility into Waters of the United States, as defined in 40 C.F.R. § 122.2 (1993), in violation of the NPDES Permit, the Defendants shall pay a stipulated penalty of $5,000 for each day of Discharge.

16

30. <u>Other Violations of Consent Decree</u>. For any violation of this Consent Decree for which the amount of the stipulated penalty is not specified above, Defendants shall pay a stipulated penalty of $500 per violation per Day of violation.

31. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

32. Defendants shall pay stipulated penalties to the United States within thirty (30) Days of receiving the United States' written demand.

33. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

34. Stipulated penalties shall continue to accrue as provided in Paragraph 52 during any Dispute Resolution, but need not be paid until the following:

      a. If the dispute is resolved by agreement or by a decision of EPA, and is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, within thirty (30) Days of the Effective Date of the agreement or the receipt of EPA's decision or order.

      b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c. If either Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

35.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Section VI (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

36.     Defendants shall not deduct the stipulated penalties paid under this Consent Decree in calculating their federal income tax.

37.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

38.     The payment of penalties and interest, if any, shall not alter in any way the Defendants' obligation to complete performance of this Consent Decree.

39.     Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.  Defendants reserve all rights to contest any such additional actions taken by the United States against the Defendants.

40.     Where a violation of this Consent Decree is also a violation of the CWA, Defendants shall be allowed a credit for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.   FORCE MAJEURE

41.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, or any entity controlled by Defendants, or

of Defendants' contractors, which delays or prevents the performance of any obligation under this Consent Decree or causes a violation of this Consent Decree despite Defendants' best efforts to fulfill the obligation.   The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.   "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

42.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic transmission to EPA as soon as possible but not later than seventy-two (72) hours of when Defendants first know that the event might cause a delay. Within seven (7) Days thereafter, Defendants shall provide in writing to EPA, in accordance with Section XIII (Notices), an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment.   Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.   Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.   Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

19

43.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

44.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.

45.     If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 41 and 42.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.     DISPUTE RESOLUTION

46.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

47.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement between the United States and the Defendants.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

48.     <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

49.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

50.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall

21

contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.    Standard of Review

a.    *Disputes Concerning Matters Accorded Record Review*.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 48 pertaining to any items requiring approval by EPA under this Consent Decree, the adequacy of the performance of work undertaken pursuant to this Consent Decree, or any other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    *Other Disputes*. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 48, the Defendants shall bear the burden of proving that their actions were in compliance with this Consent Decree; or, if the dispute concerns the interpretation of this Consent Decree, the Defendants shall bear the burden of demonstrating that their position complies with this Decree.

52.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 34.  If

Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.      INFORMATION COLLECTION AND RETENTION

53.     The United States and its representatives, including attorneys and authorized contractors, and their representatives, shall have the right of immediate entry into any Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.      Monitor the progress of activities required under this Consent Decree;

    b.      Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.      Obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

    d.      Obtain documentary evidence, including photographs and similar data; and

    e.      Assess Defendants' compliance with this Consent Decree.

54.     Upon request, Defendants shall provide EPA or its authorized representatives splits of any samples taken by Defendants. Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

55.     Until five years after the termination of this Consent Decree, the Defendants shall retain, and shall instruct their contractors and agents to preserve, copies of any reports, plans, permits, and documents submitted to the United States pursuant to this Consent Decree, as well as any underlying research and data used to develop such submittals (hereinafter referred to as "Records"). This information-retention requirement applies regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, the Defendants shall provide copies of any Records required to be maintained under this Paragraph.

56.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least ninety (90) Days prior to the destruction of any Records subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

57.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

58.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, including Section 308 of the CWA, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal laws, regulations, or permits.

## XI.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

59.     This Consent Decree resolves the civil claims of the United States and Sierra Club for the violations alleged in the Complaint filed in this action through the Date of Lodging.

60.     This Consent Decree also resolves the United States' and Sierra Club's claims for violations of, and any stipulated penalty incurred by Defendants under, the 2004 Consent Decree prior to the Date of Lodging of this Decree.

61.     Upon the Effective Date, this Consent Decree terminates the 2004 Consent Decree and the 2004 Consent Decree will be of no further force or effect. Prior to the Effective Date, the 2004 Consent Decree remains in full force and effect under the terms and conditions therein.

62.     The United States and Sierra Club reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA, its implementing regulations, or under other federal or State laws, regulations, or permit conditions. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.

63.     In any subsequent administrative or judicial proceeding initiated by the United States or Sierra Club for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 59.

64.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

25

and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, State, or local laws, regulations, or permits.

65.     This Consent Decree does not limit or affect the rights of the Parties against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

66.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.   COSTS

67.     Within sixty (60) days of the Effective Date, pursuant to CWA § 505, 42 U.S.C. § 1365(d), Defendants shall pay $11,250 to Sierra Club for its costs of litigation.

68.     Except as provided in paragraph 67, the Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce any provision of this Consent Decree or collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIII.  NOTICES

69.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:    eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-07515/1

As to the United States by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-07515/1

As to the United States Attorney for the Western District of Michigan:
Civil Division Chief
United States Attorney's Office
Western District of Michigan
P.O. Box 208
Grand Rapids, Michigan 49501

As to Sierra Club:    Aaron Isherwood
Managing Attorney, Sierra Club
Aaron.isherwood@sierraclub.org

Jessica Culpepper
Attorney
Public Justice
jculpepper@publicjustice.net

As to EPA:    Cheryl Burdett
CAFO Project Manager
r5weca@epa.gov (as a text searchable pdf)
burdett.cheryl@epa.gov

Joanna Glowacki
Associate Regional Counsel
glowacki.joanna@epa.gov

Robert Thompson
Associate Regional Counsel
thompson.robertl@epa.gov

As to Defendants by email:    James B. Doezema
Foster, Swift, Collins & Smith, P.C.
jdoezema@fosterswift.com

Kevin Lettinga
Kevin@walnutdalefarms.com

Aubrey VanLaan

Aubrey@walnutdalefarms.com

Austin Lettinga
austin@walnutdalefarms.com

James DeYoung
james@cjdfarmconsulting.com

As to Defendants by mail:       Kevin Lettinga/Aubrey VanLaan
4309 14th street
Wayland MI 49348

James DeYoung
902 Ballard St. SE
Grand Rapids, MI 49507

Foster, Swift, Collins & Smith, PC
Attn:  James B. Doezema
1700 East Beltline, NE, Suite 200
Grand Rapids, MI  49525

70.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

71.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing,

unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

72.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XV.     RETENTION OF JURISDICTION

73.      The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Section IX (Dispute Resolution) and Section XVI

(Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI.  <u>MODIFICATION</u>

74.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

75.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 51, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with <u>Federal Rule of Civil Procedure 60(b)</u>.

## XVII.  <u>TERMINATION</u>

76.    After Defendants have completed the requirements of Section IV (Compliance Requirements) and have maintained satisfactory compliance with this Consent Decree for a period of three (3) years, and have paid the civil penalties and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

77.    Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

78.    If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX of this Decree.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 days after service of their

Request for Termination.  This Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court in accordance with the provisions of Section X (Dispute Resolution).

79.     Regardless of whether Defendants have requested termination of the Consent Decree pursuant to Paragraph 76, the United States may seek the Court's approval to terminate this Consent Decree based upon the United States' determination that the Defendants have met the requirements for termination in accordance with this Section.

## XVIII.  PUBLIC PARTICIPATION

80.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified the Parties in writing that it no longer supports entry of the Consent Decree.

## XIX.   SIGNATORIES/SERVICE

81.     Each undersigned representative of Defendants, the Department of Justice, and Sierra Club certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

82.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by email and/or mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.   INTEGRATION

83.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.   The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

84.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.  APPENDICES

85.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is an aerial photograph of the Walnutdale Facility.

"Appendix B" is a copy of the NPDES Permit.

"Appendix C" is the Certificate of Coverage.

## XXIII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

86.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability),

Paragraph 4; Section IV (Compliance Requirements), Paragraphs 7-12; Section V (Review and Approval Procedures), paragraph 15-16, and Section X (Information Collection and Retention), Paragraphs 53-56, is restitution or required to come into compliance with law.

Dated and entered this  10th Day of ___May_____, 2021.


      _____/s/  Paul L. Maloney_____
HON. PAUL L. MALONEY
United States District Court Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Kevin Lettinga and Walnutdale Family Farms, LLC.*

For Plaintiff UNITED STATES OF AMERICA:

> JEAN E. WILLIAMS
> Acting Assistant Attorney General
> Environment and Natural Resources
> Division U.S. Department of Justice
> Washington, DC 20530

3/1/2021
Date

> KRISTIN M. FURRIE
> Senior Counsel
> LAUREN D. GRADY
> Trial Attorney
> Environmental Enforcement Section
> Environment and Natural Resources
> Division U.S. Department of Justice
> PO Box 7611
> Ben Franklin Station
> Washington, DC 20044-7611
> (202) 514-2794
> Lauren.grady@usdoj.gov

> ANDREW B. BIRGE
> United States Attorney
> Western District of Michigan

> RYAN D. COBB
> Assistant United States Attorney
> Western District of Michigan

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Kevin Lettinga and Walnutdale Family Farms, LLC.*

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Nathan Mark Pollins
Digitally signed by Nathan Mark Pollins
Date: 2021.02.24 14:28:34 -05'00'

MARK POLLINS
Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

GRACIELA PENDLETON
Digitally signed by GRACIELA PENDLETON
Date: 2021.02.17 16:26:54 -05'00'

GRACIE PENDLETON
Attorney-Adviser
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

34

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Kevin Lettinga and Walnutdale Family Farms, LLC.*

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

2/12/2021

T. Leverett Nelson

Digitally signed by T. Leverett Nelson
Date: 2021.02.12 09:58:54 -06'00'

_____
Date

T. LEVERETT NELSON
Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard (C-14J)
Chicago, Illinois 60604

JOANNA GLOWACKI

Digitally signed by JOANNA GLOWACKI
Date: 2021.02.10 11:10:44 -06'00'

_____
Date

JOANNA GLOWACKI
Associate Regional Counsel
Office of Regional Counsel
Region 5
U.S. Environmental Protection Agency
77 W. Jackson Boulevard
Chicago, IL 60604

ROBERT THOMPSON

Digitally signed by ROBERT THOMPSON
Date: 2021.02.10 11:05:33 -06'00'

_____
Date

ROBERT THOMPSON
Associate Regional Counsel
Office of Regional Counsel
Region 5
U.S. Environmental Protection Agency
77 W. Jackson Boulevard
Chicago, IL 60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Kevin Lettinga and Walnutdale Family Farms, LLC.*

For Plaintiff SIERRA CLUB:

_February 5, 2021_____
Date

_____
JESSICA CULPEPPER
Attorney
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
jculpepper@publicjustice.net

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America v. *Kevin Lettinga and Walnutdale Family Farms, LLC.*

For Defendants KEVIN LETTINGA and WALNUTDALE FAMILY FARMS, LLC:

2-3-21
Date

KEVIN LETTINGA
4309 14th Street
Wayland, MI 49348

84250:00001:5234346-1

41